IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**ROBERT EUGENE WILSON,**

    **Plaintiff,**

v.                                                  Case No. 3:20-cv-00495

**TWITTER, INC.,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, Plaintiff's *pro se* Complaint, (ECF Nos. 1, 2), and the initial screening to be performed by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order, is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Preliminarily, the undersigned finds that Plaintiff does not have adequate available funds to pay the filing fee upfront. Therefore, the Court **GRANTS** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs. (ECF No. 1).

Having now completed the initial screening required by 28 U.S.C. § 1915(e)(2)(B), and for the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Complaint, (ECF No. 2), be **DISMISSED,** with prejudice, for failure to state a claim, and this action be removed from the docket of the court.

I. **Relevant Facts**

This is the second complaint filed by Plaintiff, Robert Eugene Wilson ("Wilson"), against Twitter, Inc. ("Twitter") arising from the same factual scenario. In the first complaint, filed on January 23, 2020, Wilson claimed, *inter alia*, that Twitter had violated his rights under Title II of the Civil Rights Act ("CRA") and impeded his right to free speech by suspending his Twitter accounts; purportedly, on the ground that Wilson had violated Twitter's rules against hateful conduct. *See Wilson v. Twitter,* Case No. 3:20-cv-00054 (S.D.W. Va. Jan. 23, 2020) (hereinafter "*Wilson I*"), at ECF No. 1. Wilson's first case was dismissed on June 16, 2020 for a variety of reasons. *Wilson I*, at ECF No. 24. One of several reasons given for dismissal of Wilson's Title II claim was that he requested monetary damages when only injunctive relief was available. *Wilson I,* at ECF No. 22, pg. 21.

Approximately one month after having his first case dismissed, Wilson filed the instant complaint. (ECF No. 2). Apparently choosing to ignore the rest of the reasons given for dismissal of his original Title II claim, in this action, Wilson reasserts that Twitter violated his rights under Title II of the Civil Rights Act by refusing to allow him to open new Twitter accounts. In an obvious effort to avoid dismissal, Wilson requests only injunctive relief in this action. He does not, however, specify the nature of the injunctive relief requested. (*Id.* at 4).

II. **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e).

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 31-32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

Wilson brings his complaint against Twitter, a social media company that has created a platform wherein subscribers to its service may send electronically created messages to the public. After making an account, users may create and publish

3

messages, or "tweets," to the platform. Users may also view, interact with, and reply, to tweets posted by other users. *See e.g. Knight First Amendment Inst. at Columbia Univ. v. Trump,* 928 F.3d 226, 230 (2d Cir. 2019). As indicated, Wilson asserts that his complaint is brought pursuant to Title II of the CRA, codified as 42 U.S.C. § 2000a.

The CRA was enacted "to prevent … discrimination in voting, as well as in places of accommodation and public facilities, federally secured programs and in employment." *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 246 (1964). Title II entitles all individuals "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation … without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

### A. Failure to state a claim

In his bare-bones complaint, Wilson provides absolutely no factual allegations to support a civil rights violation by Twitter. Wilson's statement of claim alleges only that "Twitter refused me to create subsequent accounts." (ECF No. 2 at 4). Nonetheless, in *Wilson I*, Wilson asserted two potential discriminatory motives for Twitter's refusal to allow him to open new accounts. *See Wilson I,* at ECF No. 2. First, he alleged that his participation in Twitter was terminated based on his "heterosexuality" and the fact that he "stood up for expressing me/my [sic] heterosexuality." *Id.* Second, he contended that he was barred by Twitter because he expressed his "Christian affiliation." *Id.* As was fully explained by the Court in *Wilson I,* neither of these motives, as alleged by Wilson, states a claim under Title II of the CRA.

*1. Heterosexuality*

As noted, the CRA protects against discrimination in the enjoyment of "goods,

4

services, facilities, privileges, advantages, and accommodations" provided by "any place of public accommodation ... on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Reading Wilson's complaints collectively—and generously—Wilson alleges that he is being denied access to Twitter's services on the basis of his sexual orientation, and statements he made in support thereof. However, the CRA only protects against discrimination based on an individual's "race, color, religion or national origin." 42 U.S.C. § 2000a(a). Title II does not prohibit discrimination on the basis of sexual orientation. As Wilson's heterosexuality is not recognized as a protected class for the purposes of Title II of the CRA, he fails to state a claim against Twitter for allegedly discriminating against him based on his heterosexual orientation. *See Armstrong v. James Madison Univ.*, No. 5:16-CV-00053, 2017 WL 2390234, at *6 (W.D. Va. Feb. 23, 2017), *report and recommendation adopted*, No. 5:16-CV-53, 2017 WL 2399338 (W.D. Va. June 1, 2017) ("Thus, [the plaintiff's] allegations of discrimination based on his age and sex are not properly brought under Title II.") (collecting cases).

    *2. Religion*

While Title II of the CRA prohibits places of public accommodation from discriminating against individuals on the basis of their religion, 42 U.S.C. § 2000a(a), Wilson provides no facts in support of his allegation that Twitter discriminated against him on this ground. Indeed, beyond a conclusory assertion in *Wilson I* that his Twitter account was suspended because of his "Christian affiliation," Wilson has yet to submit facts corroborating that belief, notwithstanding the written decision in *Wilson I, which* explained that supporting factual allegations were required to state a plausible claim against Twitter. Wilson described in some detail in *Wilson I* that his account was

5

suspended after he hurled "insults" against various public figures and against homosexuality broadly. However, these tweets did not explicitly refer to his Christian beliefs and were not posted primarily as a way to promote Christianity as a religion. As the Court noted in *Wilson I,* Twitter's policy prohibiting hateful conduct is facially neutral, and there is no evidence apparent from the record that Twitter applied this policy to Wilson's tweets in a discriminatory manner. While Wilson failed to provide the verbatim content of his tweets and the "profile descriptions" that led to his accounts' suspension, he admitted that he used Twitter's platform as a way to abuse public figures and affront homosexuality. Under these circumstances, Wilson fails to allege that Twitter acted in a discriminatory manner by suspending his accounts and prohibiting him from utilizing its platforms. Wilson has not demonstrated that Twitter was even aware of a religious motivation behind the conduct for which he was suspended, much less that Twitter sanctioned him because of his religious beliefs, rather than the offensive content itself. *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) (holding that Plaintiff failed to state a claim under Title II, because he had not adequately alleged that Facebook's conduct was based on plaintiff's 'race, color, religion, or national origin.'"). Thus, the facts contained in Wilson's complaints, even when read together, simply do not lay out a plausible claim that Twitter's actions in removing Wilson from its platform was motivated by religious animus, rather than representing Twitter's neutral enforcement of its rules prohibiting harassment.

      Tweets which use offensive language to insult individuals based on their sexual orientation are prohibited by Twitter regardless of whether those tweets are motivated by religious or secular beliefs. Therefore, even if Wilson were driven by his religious

6

beliefs to create content which Twitter found to be in violation of its policy, his personal motivation does not bar Twitter from enforcing its generally applicable rules regarding user conduct. *See Coral Ridge Ministries,* 406 F. Supp. 3d at 1306 ("Yet, the fact that [the plaintiff's] opposition to homosexual conduct happens to be rooted in its *religious* beliefs does not mean that [the defendant] targeted [the plaintiff] because of its religious beliefs, as opposed to its belief, full stop, regardless of whether that belief is religiously rooted."); *see also Fall v. LA Fitness,* 161 F. Supp. 3d 601, 607 (S.D. Ohio 2016) (no religious discrimination claim where the plaintiff was treated no differently than similarly situated consumers).

In summary, as Wilson's complaint is devoid of a factual basis demonstrating that Twitter violated Title II of the CRA, the undersigned **FINDS** that Wilson fails to state a plausible claim for which relief may be granted.

### B. Section 230 of the Communications Decency Act

Although the Court covered in some detail the immunity available to Twitter under Section 230 of the Communications Decency Act ("CDA"), codified as 47 U.S.C. § 230, it bears repeating in regard to Wilson's pending complaint. *See Wilson I,* at ECF No. 22. The Fourth Circuit has explained that in enacting the CDA, "Congress carved out a sphere of immunity from state lawsuits for providers of interactive computer services to preserve the 'vibrant and competitive free market' of ideas on the Internet." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting 47 U.S.C. § 230(b)(2)). To effectuate the CDA's purposes, "courts have generally accorded [Section] 230 immunity a broad scope." *Id.*

Section 230(c) provides, in relevant part:

7

> Protection for "Good Samaritan" blocking and screening of offensive material
>
> (1) Treatment of publisher or speaker: No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
>
> (2) Civil liability: No provider or user of an interactive computer service shall be held liable on account of –
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c). As indicated by the plain language of the statute, Section 230(c)(2) immunizes providers of interactive computer services against claims arising from the provider's content-policing activities. The practical effect of the immunity, "precludes courts from entertaining claims that would place a computer service provider in a publisher's role." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). The Fourth Circuit recognized that § 230 intended to immunize interactive computer service providers when they exercised "a publisher's traditional editorial functions" while hosting the content of others. *Zeran*, 129 F.3d at 330. This includes "deciding whether to publish, withdraw, postpone or alter content." *Id.* The Fourth Circuit noted that an ancillary goal of the legislation was to "encourage service providers to self-regulate the dissemination of offensive material over their services." *Id.* at 331. Accordingly, "§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Id.*

In *Wilson I,* and in this action, Wilson has not disputed that Twitter is a provider of an "interactive computer service" within the meaning of Section 230. He likewise does not contest that his Twitter accounts constituted "another information content provider" under the Act. It is clear that Wilson attempts to hold Twitter liable as a publisher for its refusal to allow Wilson access to Twitter's platform. As Twitter's decision to prohibit Wilson's participation on the platform was reached in the course of a traditional editorial function, namely deciding what type of content to publish, Wilson's claim is precluded by application of § 230(c) of the CDA. While this case does not represent the "typical" case envisioned by § 230 immunity, wherein a litigant seeks to hold an interactive computer service provider liable for publishing content from a third-party which the litigant finds objectionable, courts have readily found that the statutory immunity also applies to the factual scenario presented here, where the plaintiff objects to the removal of his or her own content. *See Domen v. Vimeo, Inc.*, No. 1:19-CV-08418 (SDA), 2020 WL 217048, at *6 (S.D.N.Y. Jan. 15, 2020); ("In this case, Vimeo plainly was acting as a 'publisher' when it deleted (or, in other words, withdrew) [the plaintiffs'] content on the Vimeo website."); *see also Mezey*, No. 18-CV-21069 (KMM), 2018 WL 5306769, at *2 (dismissing lawsuit claiming that Twitter "unlawfully suspended [the plaintiff's] Twitter account" on grounds of Section 230(c)(1) immunity); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230 immunity applied to claims "arising from MySpace's decisions to delete [the plaintiff's] user profiles on its social networking website yet not delete other profiles…"); *Hare v. Richie*, No. CIV. ELH-11-3488, 2012 WL 3773116, at *15 (D. Md. Aug. 29, 2012) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish,

9

withdraw, postpone or alter content—are barred. It is immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published material.") (internal quotations omitted); *Ebeid*, No. 18-CV-07030-PJH, 2019 WL 2059662, at \*5 (decision to suspend the plaintiff's Facebook account was traditional editorial function and thus protected by § 230); *Lancaster v. Alphabet Inc.*, No. 15-CV-05299 (HSG), 2016 WL 3648608 at \*3 (N.D. Cal. July 8, 2016) (applying Section 230 (c)(1) immunity to the decision by YouTube, LLC, to remove the plaintiff's YouTube videos); *Bennett v. Google*, LLC, 882 F.3d 1163, 1167 (D.C. Cir. 2018) ("[T]he very essence of publishing is making the decision whether to print or retract a given piece of content.") (quotation omitted); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

Notably, the CDA expressly excludes only four classes of claims from its broad grant of immunity. These include claims involving a "Federal criminal statute," "any law pertaining to intellectual property," "any State law that is consistent with this section," and "the Electronic Communications Privacy Act." *See* 47 U.S.C. § 230(e)(1)-(4). Claims brought pursuant to federal civil rights statutes, such as Title II of the CRA, are not exempted from the immunity provided by the CDA. *See Noah,* 261 F. Supp. at 539 ("First, [the plaintiff] argues that § 230 immunity does not apply to claims brought under federal civil rights statutes. Yet, this argument runs counter to § 230's expansive language, which plainly reaches such claims."); *see also Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. App'x. 526, 526 (9th Cir. 2017) ("[W]e have found no authority, and [the plaintiff] fails to cite any authority, holding that Title II of the [CRA]

10

provides an exception to the immunity afforded to [the defendant] under the CDA."); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 66 (D. Mass. 2019) ("The CDA exempts certain laws from its reach. Federal and state antidiscrimination statutes are not exempted."); *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (finding that CDA barred claim brought under the Fair Housing Act).

Consequently, the undersigned **FINDS** that Wilson's claim that Twitter improperly revoked his accounts under Title II of the CRA is barred by the immunity granted to Twitter in Section 230 of the CDA.

IV.  **Proposal and Recommendations**

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint, with prejudice, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of

*de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** September 17, 2020

Cheryl A. Eifert
United States Magistrate Judge